Counsel, you may proceed. Thank you, Your Honor. May it please the Court, Alina Schell, Assistant Federal Public Defender for the District of Nevada, on behalf of Appellant Cameron Reed. Your Honors, there are several reasons why the Nevada Per Se Marijuana Statute at issue in this case should not be assimilated into the Federal Code. The first and most important reason is that the CFR, which punishes impaired driving, covers precisely the same conduct as Nevada's Per Se Marijuana Statute. And we get this from the Nevada Supreme Court's own interpretation of the Per Se Marijuana Statute. In Williams v. State, which this Court discussed at length in Williams v. Warden, the Nevada Supreme Court said that the driving while impaired subsection of Nevada's DUI statute and the Per Se Marijuana statute, subsection of the DUI statute, are alternative means of getting at the same exact conduct. It's the same offense. It's a single offense with two means of proof. And what this Court has said in Rocha is that if you have a case where the Federal Code and a State statute cover essentially approximately the same conduct, that counsels against assimilation. But ultimately, don't we look at the three-prong test under Lewis in this to determine that even though you have this regulation that covers some of the same general points, that we still have to consider that three-prong analysis as we have to in this case. Is that correct? Your Honor, in Lewis, the Supreme Court set forth a two-part test. The first part of the test, which I submit we surmount very easily, is does this cover the same conduct? Yes, it covers the same conduct. Having decided that, the next step that this Court must undertake is determining are there Fed – do the Federal statutes that apply to this crime preclude application? Do they preclude assimilation? And I think for several reasons, the answer to that is yes. One of the first reasons is if you look at the CFR at issue in this case, which is CFR, it's 36 CFR 4.23, and it has several different subsections. One of them, which our client was charged under, was 4.23a, which prohibits driving while impaired, which is what he was doing. The second, another subsection, goes over – it makes it – it's the per se alcohol crime, if you have .08 blood alcohol content. That's A2. Yes. Yes, Your Honor, that's A2. Now, what I think is instructive about the way that the CFR has been crafted is that it does not include – they specifically included a section saying if you have a certain amount of blood alcohol, you are per se impaired. Now, the government says there's a gap. What's your response? Your Honor, my answer is there is no gap to fill, because what the – what the per se marijuana statute does is it gets at exactly the same conduct. There is an assumption that the legislature took on when it adopted this statute that having a certain amount of a prohibited substance in your blood or urine is tatamount – it is a proxy for impaired driving. So we already have in the CFR a statute which covers impaired driving. Therefore, we don't – Could your client have been charged under the CFR without any reference to the per se marijuana statute? What the district court found was that my client was indeed impaired when he was driving. The record states that he was driving 40 miles per hour in a 15-mile-per-hour zone. He was driving the wrong way on a one-way loop. And the district court said that based on this, he was impaired. So, yes, he was properly charged and properly pled guilty to driving while impaired under the CFR. Another reason that the CFR does not include a section saying if you have a certain No, there's not a difference in penalty. It is the same – I'm sorry, Your Honor. Do you mean between the Nevada statute and the CFR? Yes. No, Your Honor. I'm going to ask the government, when the government appears, why they made the choice. Typically, it's because the sentence is higher under the State statute than it is under whatever the Federal rules are. I'm sorry for interrupting a couple times there, Your Honor. The answer is, it is essentially the same punishment. It's a misdemeanor under Nevada State law, and it's a misdemeanor. It's punishable by up to six months under the CFR. So in essence, even if he – if this Court finds that it assimilates and that he gets sentenced under both counts, they would merge for the purposes of sentencing. And that's pretty typical in these sorts of cases. He's going to get, you know, fine. He's going to get up to six months. It's not that there's any more particular – it's not a more onerous crime under Nevada law. Well, I'm trying to figure out from the standpoint of your client what the difference would have been if the government had not chosen to file under the Assimilated Crimes Act. The difference, Your Honor, is that the – using the per se marijuana statute is kind of an eased path for the prosecution to get a conviction. Driving while impaired is a more difficult evidentiary standard for the government to meet. They actually have to bring in proof of impairment. My argument is that if they hadn't charged him under the Nevada statute, we would have – we would have gone to trial. We would have forced – you know, we would have had a bench trial, as we're entitled to, in front of the magistrate. And there's a chance that he may not have been convicted. This is just an eased path to getting the same exact conduct. I'm looking at the district court's opinion, and it referred to the fact that there were – that charges were made under the CFR. So these were 5 and 6 that were added to that, right? Correct, Your Honor. It was – it was just – forgive the expression – expression adding insult to injury from my client. And I – and again, I think it's because it is a harder standard for the government to meet to prove that there's actual impairment, as opposed to being able to say, okay, he has a certain amount of a prohibited substance in his blood or in his urine. So would that not constitute a gap from the government's perspective, the level of intent required? No, Your Honor, it wouldn't, because, again, this is – it's an alternative means of getting at the same conduct. And what – and under this Court's – excuse me, under this Court's precedent, if you've got the same conduct already covered in the CFR, there's no necessity to assimilate. Another question that this Court – that this case brings up that I wasn't able to really locate an answer to in this Court's precedent is the method of assimilation that the government is proposing. As I outlined in my brief, this is a very problematic state statute. This state statute prohibits also not just having active marijuana in your system, it also prohibits having marijuana metabolite in your system. And as I outlined in my brief, this is tatamount to what the Supreme Court prohibited in Robinson v. California. A metabolite is an inert substance. It's just a chemical that's floating around in your system. It doesn't really – it does not actually affect your ability to operate a vehicle safely. And what essentially the state has done and what this – the assimilation would do would make being a drug user, legally or otherwise, a status offense, which Robinson says you can't do. And the Court – what the government is trying to do is just assimilate the constitutionally sound part of it, which is the per se part, the having just the marijuana. And my question is, is that the way that this – that assimilation works? Can the government pick and choose, like a buffet, what parts of the statute it likes? Or does this Court have to look at the statute as a whole? And if you look at the statute as a whole, I think there's a lot of constitutional questions here. And given that, I think this Court should decline to assimilate the statute. I see that I'm almost out of time. I'm just going to reserve the remainder of my time. Roberts,, you may do so, counsel. Thank you. We'll hear from the government. Good morning. May it please the Court. Adam Flake for the United States. Defense counsel said that the two statutes at issue here cover precisely the same conduct. And that's simply not accurate. There isn't a Federal statute, including the statute at issue, that prohibits driving with X amount of marijuana in your blood. So is that the gap? That's the gap. And I think that – But you could have charged him under 13a and in 423a-1 under the influence of a drug to a degree that renders the operator incapable of safe operation. Why couldn't you do that? That's correct, Your Honor. In fact, we did. We did charge him of that. We just didn't – But isn't that enough to get a conviction? Isn't that what opposing counsel is saying? Your Honor, that statute requires us to prove impaired driving. Right. And the statute under which we did convict him does not require us to prove impaired driving. It just requires us to prove that he drove with marijuana in his blood. And so there's – there is a difference in what we were required to prove. We did charge him with that. That's an election that you chose from strategic reasons to pursue. Isn't that true? Well, we charged him with both things. But I think that's one of the confusing things about this case is that he pled guilty to driving with marijuana in his blood. He did not plead guilty to driving impaired. And in fact, the defense in their brief says the facts in this case do not provide strong evidence of actual driving impairment. And I mean, we'd dispute that, obviously, but there's no dispute as to what he was driving with marijuana in his blood, which is not a crime under federal law. So were we to agree with the appellant in this case, you'd have to start from scratch, basically, right? Because what he pled to was a different – even though, I guess, counts one through four did cover the CFR, that's not what he pled to. He pled to five, right? Yes, Your Honor. He pled to – he pled to count two, which was under the CFR, to – Okay, so he did – To – I can't remember exactly what it was called, but driving incorrectly, basically, but without respect to any substance at all. Okay. And he pled guilty to this count, which was driving with marijuana in his blood. That was count five? That was count five. Okay. But I – I think that the – with respect to the first prong of the Lewis analysis, whether the conduct is covered, I think the defense sort of glosses over the fact that they want the Court to get to the harm that is caused by these kinds of conducts, the harm that is caused by either driving with marijuana in your blood or driving with – either driving with X amount of marijuana in your blood. Well, either way, you're impaired, are you not? Well, Your Honor, the statute – the state statute does not require us to prove impairment, and that's the difference. Do you agree with counsel that's a higher standard for you, a higher burden for you? I don't think it's higher or lower. It's just two crimes that have different elements. I mean, the element of the Federal crime is you drove, you had – you had some marijuana in you, and you drove – and the marijuana impaired you. And the state statute says you drove and you had X amount of marijuana in you. And that's different because the Federal statute doesn't require us to prove any amount of marijuana – I mean, any certain amount of marijuana in your blood. It just requires us to prove that you drove with marijuana in your blood and you – and it impaired your driving. So it's – they're not – one of them is not higher and one of them is not lower. It's – they are different showings that we're required to make. But we have the overarching Federal law principle that you cannot use the Assimilative Crimes Act or go to the state statute if you're dealing with the same conduct. Correct. Right. Isn't this the same conduct? No, it's not. Because the Federal law as it now stands, you can't drive with marijuana in your blood in an impaired fashion. And in – the state law says you can't drive with two nanograms of THC in your blood per five milliliters of blood. And so it's – But either way, you're driving with marijuana and you're driving, obviously, in an unsafe manner. And that's covered by 13A in the Federal rule. Assuming that we could prove driving in an unsafe manner – I mean, let me take a step back. The Federal law – say it has three elements, A, B, and C. The state law has three elements, and they're A, B, and D. And assuming that we could prove A, B, C, and D, there's no problem because all of the – you know, if all four elements are there, it's no problem. But the problem arises, in this case, where we have evidence of A, B, and D, which is what he admitted to when he pled guilty. He pled guilty to driving with marijuana in his blood and that the marijuana exceeded the threshold amount barred by a state statute. But he didn't admit that the marijuana actually impaired his driving. And that's the gap. Okay. So I understand the government's position about the gap. But let me be sure I understand your position about exactly what has to be shown here. As I understand it, Lewis at Penn State 164 says – and I'm using lay language – that if you have a Federal regulation that is sort of in the same ballpark as a state statute, it won't be assimilated if – and again, this is lay language – the application would conflict with Federal policy, two, it would effectively rewrite a defense definition that Congress had carefully considered, or three, the statute reveals an intent to occupy the field. Is that your understanding as well, that that's what we have to analyze here? I would disagree with you about the sort of part. I think it's a little stricter than that. But as far as the second part of the test, I certainly would agree with you about that, Your Honor. Okay. So what we have to do from your perspective is to take that three-pronged test from Lewis, acknowledge that there is a CFR here, indeed their client was charged under the CFR, and see whether the assimilation should occur because it meets this three-pronged test. Is that right? No, Your Honor. Our position is twofold. First of all, we don't think that – so Lewis is a two-pronged test. One is you see if the conduct is covered by a federal regulation. Yeah, I'm looking at – I think you're talking about before you find out whether there's a federal regulation that also talks about the field. I'm talking about once you have that, then you get to the three-pronged test. Right. Once we get to the three-pronged test, then it's our position that assuming we get to the second part, which we don't concede, but assuming we get to the second part of it, then you either have – they have to show either that the application would interfere with the achievement of a federal policy, would effectively rewrite a federal policy, or that they have – that Congress, or in this case, the NPS has manifest an intent to occupy the field. And we think we – if you look at the legislative history of this statute, there isn't any sort of intent like that present. It's cited in our brief, but the – in the passing of the statute, says paragraph A of this regulation, meaning paragraph A that addresses the impaired driving and the per se blood alcohol amount – those are the two that are covered by federal regulation. Paragraph A of this regulation addresses two individual offenses. And then if you look at the – if you look at the CFR 4.2, which we also cited in our brief, it says that unless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park are governed by state law. State law that is now or may later be in effect is adopted and made part of the regulations in this statute. And I think it's important to note that the two federal regulations were adopted in 1988. This marijuana – the state law marijuana blood alcohol – or excuse me, blood marijuana content was not adopted until 1998. So when the National Park Service is saying state law that is now or may later be in effect is adopted as part of the regulations, I think it's very clear what the intent of the NPS is. And the Lewis opinion is suffuse with language that says the issue in these cases, the issue is congressional intent. And I don't think – and I don't think the defense cites anything to the contrary. I mean, they have the general principle that if, you know, Congress chooses to say something in one statute and not somewhere else, then the Latin phrase that I can't remember about, you know, we assume that they meant to exclude it elsewhere. But this regulation very specifically says that that should not operate. They say there should be presumption that we mean to adopt all state laws unless we specifically say otherwise. So for this state law to have come along, you know, 12 years after the Federal statute, I think Congress's – or the NPS's intent was quite clear. Thank you, counsel. Your time has expired. Thank you, Your Honor. Ms. Schell, you have some reserve time. Thank you, Your Honor. I really have one point I'd like to make to you, Your Honors, and that is that this Court's interpretation and decision has to be guided by the Nevada Supreme Court's interpretation of the statute. And what the Nevada Supreme Court said in Williams v. State is that under its laws, this is the impaired driving and per se marijuana statute subsections are, and I'm quoting here, alternative means of committing a crime. So what it is, they're alternative means of committing one offense. It is not, as the Court is urging – I mean, I'm sorry, Your Honors, as the government is urging – it's not two separate offenses. It's the same offense, and it's two ways of getting at it. Well, the National Park Service said to the contrary, right, in its own regulations. It said these are two individual separate offenses. They're not just two ways to get at the same thing. That's the Federal law that we're faced with, right? Yes, Your Honor. But if this Court were to assimilate the per se marijuana statute, it would be in contravention to Nevada law. And I think that I would urge this Court not to do something that would be contrary to applying Nevada law in an enclave in Nevada that's contrary to Nevada law. Unless there's any further questions, thank you, Your Honors. Thank you very much, counsel. The case just argued will be submitted for decision.
judges: Anello, O'scannlain, Smith